ALI LAW GROUP, P.C.
*Attorneys for Plaintiff*
775 Park Avenue, Suite 255
Huntington, New York 11743
(631) 423-3440
Sima Asad Ali (SA - 4423)


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
LISA ALTER,

                               Plaintiff,                     CV 13-1100(JS)(AKT)

                -against-

THE ROCKY POINT SCHOOL DISTRICT,
 MR. MICHAEL RING

                             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X



**MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO**

**COMPEL DISCOVERY AND MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF RELEVANT FACTS...................................................................2

    A. Plaintiff Properly Propounded Requests For Electronic Stored Information And Defendants Failed To Provide ESI, Despite Plaintiffs Good Faith Attempts To Resolve Discovery Disputes.......................................................................2

    B. Defendants Willfully Failed To Institute And Abide By A Litigation Hold As Evidenced By Susan Wilson's Sworn Testimony……………………………..3

    C. Defendants' Have Permitted the Destruction of Relevant Evidence...……4

    D. Defendants' Are Likely Withholding of Relevant Evidence………………5

    E. Lack of Expertise of Susan Wilson to Conduct Electronic Discovery……...5

    F. Lack of Proper Oversight and Guidance by Defendants' Counsel in the Electronic Discovery Process……………………………………………………..6

    G. Lack of a Complete and Thorough Search of Electronic Discovery……....7

    H. The Search Terms Were Not Agreed Upon By Counsel And Were Determined By A Material Witness In This Litigation………………….…..8

    I. Documents Identified In The Affidavit Were Not Provided In Electronic Format And Not Provided In The Format Asked For By Counsel……………9

ARGUMENT.................................................................................................................9

I. THERE IS SUFFICIENT BASIS FOR THE COURT TO IMPOSE SANCTIONS AGAINST DEFENDANTS FOR THEIR FAILURE TO PROPERLY INSTITUTE A LITIGATION HOLD, FAILURE TO CONDUCT A GOOD FAITH SEARCH DILIGENTLY AND FOR DEFENSE COUNSEL'S LACK OF OVERSIGHT……9

II. PLAINTIFF HAS DEMONSTRATED A SUFFICIENT BASIS FOR THE COURT TO IMPOSE SANCTIONS AGAINST THE DEFENDANTS FOR SPOLIATION OF EVIDENCE……………………………………………………12

    A. Spoliation Prong One: Obligation and Control……………………………13

    B. Spoliation Prong Two: State of Mind...........................................................16

C. Spoliation Prong Three: Relevance and Prejudice.......................................18

III.  PLAINTIFF HAS DEMONSTRATED SUFFICIENT PREJUDICE BY
DEFENDANTS' ACTION FOR AN ADVERSE INFERENCE CHARGE...........20

A. Prong One: Culpable State of Mind…..........................................................21

B. Prong Two: Prejudice to the Non-Spoliator..................................................22

IV.  THERE IS SUFFICIENT EVIDENCE ON THE RECORD FOR THE COURT
TO MANDATE THAT AN INDEPENDENT FORENSIC COMPUTER EXPERT
CONDUCT ELECTRONIC DISCOVERY OF DEFENDANTS' SYSTEMS,
COMPUTERS, EMAILS AND DEVICES………………………………………..24

V. ATTORNEY'S FEES.................................................................................................24

THEREFORE..............................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

Barsoum v.v N.Y.C. Hous. Auth., 202 F.R.D. 400 (S.D.N.Y. 2007)……………………………...……….........13

Byrnie v. Town of Cromwell, Bd. Of Educ., 243 F.3d 93, 107 (2nd Cir. 2001)…………………….......12, 13, 16, 21

Chan v. Triple 8 Palace, No. 03 CV 6048, 2005 WL 1925579, at *6 (S.D.N.Y. 2005)…......……….…..14, 15, 17, 18

De Espana v. Am. Bureau of Shipping, No. 03 CV 3573, 2007 WL 1686327, at *6 (S.D.N.Y. 2007)…...……….18

Design Strategy, Inc. v. Davis, 469 F. 3d 284, 294 (2nd Cir. 2006)………………………….…………….……..9

DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2nd Cir. 1998) ………………….………..……11

Farella v. City of New York, No. 05 CV 5711, 2007 WL 193867, at *2 (S.D.N.Y. 2007)……....………………13

Fujitsu Lts. V. Federal Express Corp., 247 F.3d 423, 436, (2nd Cir. 2001)…....………………………............12, 13

Gutman v. Klein, No. 03 CV 1570(BMC)(RML), 2008 WL 4682208, at *11 (E.D.N.Y. 2008)…..……….9, 11, 19

Houlihan v. Marriot Int'l, Inc., No. 00 CV 7439, 2003 WL 22271206, at *1 (S.D.N.Y. 2003)…....……………12

In re Durand, No. 07 CV 5037(JFB), 2008 WL 4282601, at *5 (E.D.N.Y. 2008)……………...…………….11

John B. Hull, Inc v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2nd Cir. 1988)…....…………….12

Klezmer v. Buynak, 227 F.R.D. 43, 51 (E.D.N.Y. 2005)…………………………………………...…….9, 11

Kronisch v. United States, 150 F.3d 126, 127(2nd Cir. 2000)…...…………………………..........................13, 22

Merck Eprova AG v. Gnosis S.P.A., No. 07 CV 5898(RJS), 2010 WL 1631519, at *4 (S.D.N.Y. 2010)….…...10, 11

Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 217 (1st Cir. 1982)……...........................21

New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2nd Cir. 1983)….....……24

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010)……………………………………...……………………...……………….….14, 16, 17, 18, 19

Phoenix Four, Inc. v. Strategic Res. Corp., No. 05 Civ. 4837, 2006 WL 1409413, at *3, *5-6, *9 (S.D.N.Y. 2006)………………………………………………………………………..………………………….11, 15

Pomeroy v. Benton, 77 Mo. 64, 86 (1882)……………………………………………………….……...........21

Reilly v. Natwest Mkts, Group Inc., 181 F.3d 253, 267 (2nd Cir. 1999)……………………...….……...…....9, 16, 22

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2nd Cir. 2002)…....…........11, 13, 16, 18

Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 290 (S.D.N.Y. 2009)………………..…….…10, 22

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79, 81 (3rd Cir. 1994) ………………..………………..…21

Sterbenz v. Attina, 205 F. Supp. 2d 74 (E.D.N.Y. 2002)……………………………………….………12, 16

Sterle v. Elizabeth Arden, Inc., No. 3:06 CV 01584, 2008 WL 961216, at *1 (D. Ct. 2008)…...……………….24

ii

<u>Tillberg v. Next Management Co.</u>, No. 04 CV 7373, 2005 WL 2759860, at *1 (S.D.N.Y. 2005)…....……….……24

<u>Treppel v. Biovail Corp.</u>, 249 F.R.D. 111, 118 (S.D.N.Y. 2008)…………………………..................14, 17, 18, 19, 24

<u>Toussie v. County of Suffolk</u>, 806 F. Supp.2d 558 (E.D.N.Y. 2011)……………...…………………......……....19

<u>Turner v. Hudson Transit Lines</u>, 142 F.R.D. 68, 73 (S.D.N.Y. 1991)……………….....…....…….......14, 15, 21, 22

<u>Vagenos v. LDG Fin. Services, LLC</u>, No. 09 CV 2672, 2009 WL 5219021, at *2 (E.D.N.Y. 2009)……………..14

<u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 250 F.R.D. 251, 262 (D. Md. 2008)………………………………...7
<u>Welsh v. United States,</u> 844 F.2d 1239, 1246 (6th Cir. 1988)…….............................................................................20

<u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, (2nd Cir. 1999)…………………………...…………..12

<u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)…………..………..........7, 13, 15, 17, 18

<u>Zubulake v. UBS Warburg LLC</u>, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)……….……...…….....……7,14, 15, 16, 18

## RULES

Federal Rules of Civil Procedure:

Rule 26…………………………………………………………………………………...................5, 7, 15, 16, 23

Rule 34……………………………………………………………………………………………….……...7, 10

Rule 37………………………………………………………………………………………………………1, 7, 11, 12

ALI LAW GROUP, P.C.
*Attorneys for Plaintiff*
775 Park Avenue, Suite 255
Huntington, New York 11743
(631) 423-3440
Sima Asad Ali (SA - 4423)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
LISA ALTER,

|  |  |
|---|---|
| Plaintiff, | CV 13-1100(JS)(AKT) |
| -against- | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY AND MOTION FOR SANCTIONS** |
| THE ROCKY POINT SCHOOL DISTRICT, MR. MICHAEL RING | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in support of its Second motion to compel discovery and for motion sanctions pursuant to Fed. R. Civ. P. 37. This motion is being submitted due to the patent failure of Defendants to meet their obligations related to electronic discovery. Plaintiff made a first motion to compel on October 1, 2013. Despite a Compliance Conference and Order by the Court on November 4, 2013, and substantial communications, Defendants have failed to properly institute a litigation hold. Further Defendants have not produced virtually any more electronic discovery than they had in September 2013 nor have they engaged in a diligent and good faith search of all relevant systems, computers, emails and devices. Thus, at this time the Plaintiff seek a motion for sanctions related to the failure of Defendants to institute a litigation hold and the likely destruction and withholding of evidence including but not limited to sanctions for attorney's fees, sanctions for spoliation of evidence, an adverse inference charge, and an order to compel electronic discovery by an independent expert at the expense

1

of the Defendants.  Plaintiff also requests a compliance conference with Magistrate Tomlinson on or around January 31, 2014 to address these and other time sensitive discovery issues.

## STATEMENT OF RELEVANT FACTS

### A.  Plaintiff Properly Propounded Requests For Electronic Stored Information And Defendants Failed To Provide ESI, Despite Plaintiff's Good Faith Attempts To Resolve Discovery Disputes

At the Compliance Conference with the Honorable Judge Tomlinson on November 4, 2013, one of the issues discussed was Plaintiff's failure to produce ESI (*See* Exhibit A, Honorable Judge Tomlinson's November 4, 2013 Court Order).  As a follow-up to the Compliance Conference, Plaintiff's counsel sent defense counsel a letter on November 5, 2013 outlining with detail and specificity Plaintiff's electronic discovery requests and Defendants' obligations (*See* Exhibit B Letter by Sima Ali, Esq. to Maureen Casey, Esq. dated November 5, 2013).  The letter was sent in a good faith attempt to assist Defendants with identifying, producing and preserving electronic discovery pursuant to the Court's directive regarding an affidavit for Ms. Susan Wilson.  As a follow-up, Plaintiff's counsel sent another letter dated November 20, 2013, reminding Defendants, once again, of their obligation to provide e-discovery in its native format (*See* Exhibit C, letter by Sima Ali, Esq. to Maureen Casey, Esq.).

Defendants did procure an affidavit of Ms. Wilson dated November 15, 2013[1].  Further, Ms. Wilson did appear for a deposition on January 15, 2014.  Additionally, Defendants did produce three supplemental discovery responses and two CDs containing electronic discovery on or around December 2, 2103.  However, Defendants only provided in "native" format three MS word documents, a limited number of electronic emails in .pst format (the emails appear to be the same exact emails that were produced in hard copy in September 2013), and electronic copies of the Board of Education minutes and

---

[1] Ms. Wilson admitted her November 2013 affidavit was not drafted by herself.  *Tr.* at 44-45.  Instead, she was given the affidavit to review for accuracy, and to sign. *Tr.*  Ms. Wilson was unsure of how to answer questions regarding the affidavit since she did not produce it herself.

agendas from May 2010 – September 2010. (*See* Exhibit G, letter from Maureen Casey, Esq. to Sima Ali, Esq.). The lack of discovery exchanged is in apparent disregard to Plaintiff's letters dated November 5, 2013, and November 20, 2013 which were good faith attempts to help Defendants identify, produce and preserve e-discovery pursuant to the terms of the Court's Order (*See* Exhibit A and Exhibit C). Further it was only through questioning at Ms. Wilson's deposition on January 15, 2014 that systems, computers, emails, devices, and individuals, such as the network administrator, were actually identified by the Defendants.

Plaintiff has in good faith attempted to confer with Defendants' counsel via telephone, written correspondence, and in person on January 15, 2014 (during Ms. Wilson's deposition) in an effort to secure disclosure without resorting to further court action, but such efforts were unproductive (*See* Exhibits B, C, and E, emails and correspondence between Sima Ali, Esq. and Maureen Casey, Esq. regarding outstanding discovery).

**B. Defendants Willfully Failed To Institute And Abide By A Litigation Hold As Evidenced By Susan Wilson's Sworn Testimony.**

Pursuant to Judge Tomlinson's Order, dated November 4, 2013, Susan Wilson, the individual who conducted searches on Defendants' computers and networks, submitted an affidavit dated November 15, 2013 detailing her efforts to conduct electronic discovery, and appeared for a deposition on January 15, 2014 and provided testimony related to her affidavit (*See* Exhibit D, Affidavit of Susan Wilson dated November 15, 2013 and Exhibit J, Deposition of Susan Wilson January 15, 2014, hereafter *Tr.* at ____).

According to Ms. Wilson, despite having notice of the pending lawsuit as of November 2010 (date of Notice of Claim), Defendants' counsel have not taken any steps to preserve electronic data nor prevent deletion of material (*See* Exhibit J, Deposition of Susan Wilson). Specifically, a litigation hold letter was not sent to employees of the Rocky Point School District. *Tr.* at 13. Even more troubling,

was the fact that Michael Ring a named party in this lawsuit had never been informed of a litigation hold as far as Ms. Wilson knew and had never been instructed to preserve any relevant electronic data or to cease deletion of an electronic data. *Tr. at 38-39*. Ms. Wilson admitted she was never told to stop overwriting backup data. *Tr.* at 13. Furthermore, the district server crashed in September of 2011, resulting in the loss of emails. *Tr.* at 18. Additionally, key custodians of the case were not advised to not delete files from the district's H drive. *Tr.* at 68. Michael Ring was never informed of a litigation hold or told to cease any deletion of electronic data on his "personal" work computer.

It is clear through Ms. Wilson's affidavit that Defendants or Defendants' counsel did not take steps or issue instructions to preserve any email communications and other ESI after receiving notice of potential claims against them. Ms. Wilson, at the very least, should have taken steps to suspend the automatic self-write process on the District's back up drives so that relevant ESI was not destroyed. Her failure to do so was intentional and reckless.

### C. Defendants' Have Permitted the Destruction of Relevant Evidence

Ms. Wilson admitted that she was not able to conduct a search of ROCKY POINT's back up drives because they self-write automatically every 6-8 weeks (*See* Exhibit D, Affidavit of Susan Wilson and Exhibit J, Deposition of Susan Wilson). It cannot be disputed that Defendants were on notice and therefore were aware or should have been aware of their obligation to preserve documents. They were reminded of this obligation through a letter written by Sima Ali, Esq. to Maureen Casey in which Ms. Ali states, "Please also suspend any policies or protocols that may lead to the destruction of ESI and notify and all any and all employees in possession of discoverable material." (*See* Exhibit B, letter by Sima Ali, Esq. to Maureen Casey, Esq.). Despite this notice, Ms. Wilson essentially admits that Defendants did not perform a litigation hold, an act in violation of the Court Order. Plaintiff has been irreparably prejudiced by the failure to preserve ESI relevant to this matter.

**D. Defendants' Are Likely Withholding of Relevant Evidence**

In Ms. Wilson's affidavit, she states that through one search, she identified 113 Word Documents and 52 Excel files related to Lisa Alter. Yet she fails to mention that the search that yielded these documents was performed in September of 2010 after Lisa Alter left the employ of the Rocky Point School District. This fact was confirmed in Ms. Wilson's deposition, which occurred on January 15, 2104. Despite locating these files these documents in 2010, they were not produced in any discovery papers or in their native format (*See* Exhibits D and E). Further, there is a substantially limited production of emails in their native format and there is virtually no evidence of any search for electronic data including documents, telephone calls, texts, or other media.

Ms. Wilson stated that Carla D'Ambrosio's, Michael Ring's, Greg Hilton's, and her individual computers were not searched for responsive documents. *Tr.* at 38. However, Ms. Wilson went on to state she could not search Michael Ring's computer because it was his personal computer and that Ms. Casey worked with Michael Ring in searching his computer for relevant documents. *Tr. at 38 and 39.* Ms. Wilson then stated Michael Ring performed the search himself. *Tr at 38 and 39.* To date there is no evidence that any responsive documents have been produced as a result of a search of Michael Ring's personal work computer.

**E. Lack of Expertise of Susan Wilson to Conduct Electronic Discovery**

Ms. Wilson admitted she has never been involved in electronic discovery and read about Federal Rule of Civil Procedure 26 on the Internet in the fall of 2013. *Tr.* at 7. Even though the Rocky Point School District utilizes an outside consultant as a network administrator, Defendants chose to place Ms. Wilson in charge of the electronic discovery process. *Tr.* at 50-51. Furthermore, Plaintiff was never informed about the presence of a network administrator. Ms. Wilson stated she does not know how the backup system works because she is not the network administrator. *Tr.* at 13. Ms. Wilson admitted the

network administrator is responsible for the email and backup systems, and she is only responsible for "Gaggle", the email backup system as identified by Ms. Wilson on January 15, 2014. *Tr.* at 14. To further demonstrate Ms. Wilson's lack of expertise regarding the district's technology policies, she admitted she does not know whether the district has a policy on the use of personal devices in the workplace. *Tr.* at 40. Surely, the head of the district's technology department should be aware of such a policy. Ms. Wilson further admitted she did not know she had to inform the identified key custodians in the case to preserve electronic data. *Tr.* at 61-62. Lastly, Ms. Wilson made sure to clarify she is responsible for instruction, not the network. *Tr.* at 65.

## F. Lack of Proper Oversight and Guidance by Defendants' Counsel in the Electronic Discovery Process

There has been a lack of oversight and guidance by Defendants' counsel in the electronic discovery process. Defendants' counsel was present for only one electronic discovery search and the electronic discovery process was explained to counsel, instead of counsel providing guidance on the process. *Tr.* at 20, 32-33. Ms. Wilson conducted searches in her home on the weekend, outside of counsel's presence, after Defendants had submitted their discovery responses and Plaintiff had submitted her first motion to compel discovery. *Tr.* at 27. Furthermore, Ms. Wilson understood the scope of the electronic discovery search to only include emails. *Tr.* at 46. Defendants' counsel failed to correct Ms. Wilson's misconception. According to Ms. Wilson, the emails that were produced in response to the November 4, 2013 Order from Judge Tomlinson were the result of the search she conducted in October of 2013. Coincidentally, the emails produced electronically are virtually the same emails that were produced in hard copy format on September 2, 2013, before the alleged extensive search Ms. Wilson conducted. Defendants' counsel did not provide Ms. Wilson with the document production requests submitted by Plaintiff nor the November 5, 2013 letter by Plaintiff's counsel detailing Defendants' electronic discovery obligations. Lastly, Ms. Wilson admitted she determined the

temporal scope of the search.  *Tr.* at 49-50.

Further, it appears that Ms. Wilson made her own determination of possible custodians of information without referencing any input from Defendants' counsel who was ordered to supervise the process (S*ee* Exhibit A, Judge Tomlinson's Court Order which states, "The Court emphasized to Attorney Casey that all counsel in the case are responsible for directly overseeing, supervising and reviewing the discovery efforts taken by the clients."  *See also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004); *Victor Stanley, Inc. v. Creative Pipe, Inc*., 250 F.R.D. 251, 262 (D. Md. 2008) (the Court held that Defendants neither identified keywords nor the qualifications of the persons who selected them to design a proper search; they failed to demonstrate that there was quality assurance testing; and when their production was challenged by the Plaintiff, they failed to carry their burden of explaining what they had done and why it was sufficient)).  Based on Ms. Wilson's Affidavit and Deposition, it is clear that Defendants are not in compliance with the mandates of FRCP 26, 34, and 37.

Further, Ms. Wilson directed District Clerk, Patricia Jones to research whether she sent any correspondence to the Board of Education with respect to Lisa Alter and the selection of an outside investigator for the Title IX claim (*See* Exhibit D, Affidavit of Susan Wilson).  Patricia Jones does not appear to have received any directives or supervision from Defendants' counsel. Further, Ms. Wilson directed Loretta Sanchez, the current secretary to the current superintendent to research the past superintendent, Carla D'Ambrosio's physical correspondence files, memoranda, notes, and letters referencing the litigation. Loretta Sanchez does not appear to have received any directives or supervision from Defendants' counsel.

### G.  Lack of a Complete and Thorough Search of Electronic Discovery

Ms. Wilson admits that she was responsible for conducting the electronic discovery in this

matter, however glaringly absent from Ms. Wilson's affidavit and deposition testimony is evidence of these searches, any logs and/or reports, and the network administrator's involvement. Ms. Wilson, not Ms. Casey, determined which computers would be searched. In her deposition and in her affidavit Ms. Wilson identified several computers, mobile devices, emails and programs that were **not** searched. The following individual's computers were not searched: Carla D'Ambrosio, Michael Ring, Lisa Alter, David Pearl, Michael Nofi, Susan Wilson, and Greg Hilton. *Tr.* at 38-41. Work and personal emails of the following individuals were not searched, even though identified in discovery documents: Michael Ring, David Pearl, Michael Nofi and other Board Members, Susan Blake - Carla D'Ambrosio's June 2010 Administrative Assistant, Loretta Sanchez, Patricia Jones, and Greg Hilton. *Tr.* at 53-56.

Moreover, Ms. Wilson testifies in her deposition that the first "thorough" electronic discovery search was conducted in October of 2013, almost three months after Defendants' initial discovery response was due, and over one month after the extended deadline. *Tr.* at 46-47.

**H.  The Search Terms Were Not Agreed Upon By Counsel And Were Determined By A Material Witness In This Litigation.**

Ms. Wilson testified that she determined the temporal scope of the search. She also testified that Ms. Casey discussed with her search terms. Ms. Casey did not discuss any search terms with counsel for the plaintiff and did not show Ms. Wilson any of the demands provided by Plaintiff's counsel. Furthermore, Ms. Wilson utilized restrictive search terms. She used the word "and," not the word "or," which naturally drastically limits search results. *Tr.* at 35.

Additionally, while Ms. Wilson states that she searched the terms "Lisa Alter", "contract", "discrimination", harassment", "complaint", and "investigation" for the period of May 1, 2010 to August 31, 2010 after discussing with counsel. Ms. Wilson specifically states that she did not conduct ESI searches using these same terms for David Pearl and Michael Nofi, and to date, no ESI has been produced by or for these two individuals. This is particularly troubling as they are key players in this

matter and hold supervisory or authoritative positions within THE ROCKY POINT SCHOOL
DISTRICT.   (Exhibit D, Affidavit of Susan Wilson).

Noticeably absent from ESI searches were the terms "Lisa" and "Alter". Further odd was the fact
that when Ms. Wilson broadened the search for all users, she again did not include the terms "Lisa" and
"Alter" and only searched the terms "harassment", "discrimination", and "hostile work environment",
leaving out "Lisa Alter", "complaint", "contract", and "investigation", which were used in previous
searches. The use of selective search terms for one group of custodians, and another group of search
terms for another group of custodians is suspect, at best.

### I.   Documents Identified In The Affidavit Were Not Provided In Electronic Format And Not Provided In The Format Asked For By Counsel

Plaintiff's counsel requested for documents to be provided in .pdf format; emails were provided in .pst
format. *Tr.* at 74.  Ms. Wilson explained emails could have been saved in .pdf format. *Tr. at 74.*
Defendants' logs of searches and litigation hold letter were not provided to Plaintiff.

### ARGUMENT

### I.  THERE IS SUFFICIENT BASIS FOR THE COURT TO IMPOSE SANCTIONS AGAINST DEFENDANTS FOR THEIR FAILURE TO PROPERLY INSTITUTE A LITIGATION HOLD, FAILURE TO CONDUCT A GOOD FAITH SEARCH DILIGENTLY AND FOR DEFENSE COUNSEL'S LACK OF OVERSIGHT

In the instant matter, Plaintiff asserts that the Court is well within its discretion to impose
sanctions against Defendants for their discovery abuses including but not limited to an award of
attorneys' fees to Plaintiff. *Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 267 (2d Cir. 1999); *accord
Gutman,* 2008 WL 4682208, at *11; *Klezmer,* 227 F.R.D. at 51; *see Design Strategy, Inc. v. Davis,* 469
F.3d 284, 294 (2d Cir. 2006).   ).  There is ample evidence from the sworn testimony of the custodian of
records, Ms. Wilson, that the Defendants did not find and disclose all responsive documents as the
Defendants did not engage in a thorough and comprehensive search of all systems, computers, emails

and devices of "key players" in this litigation.  ("The Federal Rules of Civil Procedure authorizes a party to serve on any other party a request to produce ESI in "the responding party's possession, custody, or control" FRCP 34(a). A party that has been served with a request for ESI is charged with "find[ing] and disclos[ing] all responsive documents or properly set[ting] forth why the documents are being withheld.")  *Merck Eprova AG v. Gnosis S.P.A.,* No. 07 Civ. 5898(RJS), 2010 WL 1631519, at *4 (S.D.N.Y. Apr. 20, 2010).   The obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together "to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produce responsive documents." *Richard Green (Fine Paintings) v. McClendon,* 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Despite Plaintiff's counsel's numerous attempts to "work together with  defense counsel" to ensure that ESI is properly located, preserved and produced, Plaintiff's attempts have been unsuccessful due to Defendants' counsel's lack of good faith.   Defendants' counsel has been provided numerous correspondence regarding her obligations with respect to ESI.  Further Defendants' counsel was reminded in Court and through at least two Court Orders of her obligations.  In spite of this, based on Ms. Wilson's sworn testimony, it is clear that defense counsel has an utter disregard for the FRCP and seeming lack of knowledge of obligations related to electronic discovery.  It is simply shocking that Defendants, especially a named Defendant in his individual capacity, Michael Ring, have not been advised of their obligations to preserve data and prevent the deletion of documents.

        Defense counsel has consistently failed to adhere to deadlines and has not had adequate oversight of the electronic discovery process.  For example, Ms. Wilson stated Defendants' counsel in May of 2013 discussed with her the names of individuals whose emails should be searched; the method of the search and relevant search terms were not discussed (*See* Exhibit J at 22-23, Deposition of Susan Wilson).  Furthermore, Ms. Wilson admitted she determined the temporal scope of the electronic

discovery search because Defendants' counsel did not instruct her on the dates of the search. *Tr.* at 49-50. Ms. Wilson admitted she understood the focus of the electronic discovery to be emails. *Tr.* at 42-44. Clearly, Defendants' counsel did not adequately supervise or direct Ms. Wilson. Moreover, Ms. Wilson admitted Defendants' counsel was not present during electronic discovery searches, as she conducted searches at her home. *Tr.* at 27. At no point did Defendants' counsel provide to Ms. Wilson the document production request submitted by Plaintiff. *Tr.* at 28. Additionally, Defendants' counsel did not show Ms. Wilson the November 5, 2013 letter prepared by Plaintiff's counsel, which discussed in detail Defendants' electronic discovery obligations. *Tr.* at 28.

When parties and/or their counsel fail in their duty to conduct proper searches of ESI, sanctions may be appropriate. *See Phoenix Four, Inc. v. Strategic Res. Corp.,* No. 05 Civ. 4837, 2006 WL 1409413, at *5–6, *9 (S.D.N.Y. May 23, 2006). The predicate for such sanctions is Rule 37 of the Federal Rules of Civil Procedure and/or the Court's inherent authority to manage its own affairs. *See* 11/12/09 M & O at 3, D.E. # 189 (citing FRCP 37(c)(1)); *Phoenix Four,* 2006 WL 1409413, at *3; *see also Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 106–07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.") (citing *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 135–36 (2d Cir. 1998)). Discovery sanctions serve three purposes: they (1) ensure that a violating party does not benefit from its own failure to comply with discovery; (2) serve as a specific deterrent to achieve compliance with the particular discovery order at issue; and (3) serve as a general deterrent in the case at hand and in other litigation, provided that the party against whom sanctions are imposed was in some sense at fault. *See In re Durand,* No. 07–CV–5037 (JFB), 2008 WL 4282601, at *5 (E.D.N.Y. Sept. 16, 2008); *see also Gutman v. Klein,* No. 03CV1570 (BMC)(RML), 2008 WL 4682208, at *11 (E.D.N.Y. Oct. 15, 2008); *Klezmer v. Buynak,* 227 F.R.D. 43, 51 (E.D.N.Y. 2005). In the instant case, Defendants' counsel has repeatedly misrepresented that ESI does not exist and has

wholly failed to supervise the disclosure of ESI despite being instructed to by the Court and having an affirmative obligation to do so under the FRCP.   Defendants overall lack of good faith, lack of transparency, repeated delays, and failure to institute a proper litigation hold, should be subject to sanctions, including the award of attorneys' fees to Plaintiff.

## II.  PLAINTIFF HAS DEMONSTRATED A SUFFICIENT BASIS FOR THE COURT TO IMPOSE SANCTIONS AGAINST THE DEFENDANTS FOR SPOLIATION OF EVIDENCE.

FRCP of Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose various sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). It is clear that sanctions may therefore be imposed when a party spoliates evidence in violation of a court order. *See, e.g., West v. Goodyear Tire & Rubber Co.* 167 F.3d 776, 779 (2d Cir. 1999) (citing *John B. Hull. Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir. 1988)).   "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted). However, any such sanction "should be 'molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine,' which is predicated upon the rationale that by destroying evidence, one party has deprived the other of the ability to prosecute or defend an action." *Sterbenz v. Attina,* 205 F.Supp.2d at 74 (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d at 779).

The Second Circuit has defined spoliation as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 107 (2d Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d at 779); *see also Houlihan v. Marriot Int'l, Inc.,* No. 00 CV 7439, 2003 WL 22271206, at *1 (S .D.N.Y. Sept. 30, 2003). A party has an obligation to preserve evidence when the party is on notice "that the evidence is

relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d at 436 (citing *Kronisch v. United States,* 150 F.3d at 126); *Barsoum v. N.Y.C. Hous. Auth.,* 202 F.R.D. at 400 (holding that a party is under an obligation to retain documents and other evidence that it knows may be relevant to a pending or future litigation). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake v. UBS Warburg L.L.C. (Zubulake IV),* 220 F.R.D. 212, 217 (S.D.N.Y.2003) (emphasis added). This obligation to preserve relevant evidence exists whether or not the documents have been specifically requested in a demand for discovery or whether there has been an explicit discovery order issued. *Kronisch v. United States,* 150 F.3d at 126–27; *Barsoum v. N.Y.C. Hous. Auth.,* 202 F.R.D. at 400.

A party seeking sanctions for the spoliation of evidence must establish that three elements are present in order to be awarded such sanctions: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002); *Farella v. City of New York,* No. 05 CV 5711, 2007 WL 193867, at *2 (S.D.N.Y. Jan.25, 2007); *see also Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d at 107–09; *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d at 436; *Zubulake IV,* 220 F.R.D. at 220. Plaintiff has sufficiently established these three required elements as outlined below.

### A. *Spoliation Prong One: Obligation and Control*

The first element necessary to establish spoliation requires that the plaintiffs show "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Tr.* Courts in this circuit have found that "once a party reasonably anticipates litigation it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the

preservation of relevant documents." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 685 F.Supp.2d 456, 466 (S.D.N.Y.2010) (quoting *Treppel v. Biovail Corp.,* 249 F.R.D. 111, 118 (S.D.N.Y.2008); *Zubulake IV,* 220 F.R.D. at 218). This obligation to preserve evidence "runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.' " *Chan v. Triple 8 Palace,* No. 03 CV 6048, 2005 WL 1925579, *6 (S.D.N.Y. Aug. 11, 2005) (quoting *Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 73 (S.D.N.Y.1991)); *see also Vagenos v. LDG Fin. Servs., L.L.C.,* No. 09 CV 2672, 2009 WL 5219021, at *2 (E.D.N.Y. Dec. 31, 2009).

"Once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold,' " which will "involve communicating with the 'key players' in the litigation.... Unless counsel interviews each [player], it is impossible to determine whether all potential sources of information have been inspected." *Zubulake v. UBS Warburg L.L.C. (Zubulake V),* 229 F.R.D. 422, 432 (S.D.N.Y.2004) (emphasis added). "Key players" have been defined as "the people identified in a party's initial disclosure and any subsequent supplementation thereto. Because these 'key players' are '[those] likely to have relevant information,' it is particularly important that the preservation duty be communicated clearly to them." *Tr.* at 33–34.

Here, it is clear, based on Ms. Wilson's deposition testimony, that a litigation hold was either not put into place, or not properly effectuated, leading to the spoliation of evidence (*See* Exhibit J, Deposition of Susan Wilson). Defense counsel had an affirmative responsibility to advise Ms. Wilson and other "key players", namely Michael Ring, to preserve all back up drives of Defendants' computer network but this simple directive was either not provided by counsel, or disregarded by Defendant. *Tr.* at 9. Ms. Wilson stated she was not preserving data; instead, she merely "look[ed] through" emails. *Tr.* at 11-12.

Further Michael Ring a named party and other "key players" were not advised of their obligation

to preserve evidence. *See Chan v. Triple 8 Palace, Inc.,* 2005 WL 1925579, at *7 (noting that "the utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent"); *see also Phoenix Four. Inc. v. Strategic Resources Corp.,* No. 05 CV 4837, 2006 WL 1409413, at *5–6 (S.D.N.Y. May 23, 2006) (underscoring counsel's affirmative duty to ensure that all sources of relevant information are discovered); *Zubalake IV,* 220 F.R.D. at 217 (holding that anyone who anticipates being a party to a lawsuit " 'is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request' " (quoting *Turner v. Hudson Transit Lines,* 142 F.R.D. at 72)). Not only were defendants required to institute a proper litigation hold, but there are "a number of steps that counsel should take to ensure compliance with the preservation obligation," such as notifying the client of that obligation and repeatedly reminding key players of the duty to preserve evidence. *Zubulake V.* 229 F.R.D. at 432–34.

Further aggravating defendants' counsel's failure to institute a litigation hold is the fact that the Court specifically instructed Counsel to oversee and supervise the search of ESI so that relevant documents could be produced. It appears that this did not occur (*See* Exhibit A). Instead, defendants' counsel left Ms. Wilson in charge of conducting electronic discovery (*See* Exhibit J). Ms. Wilson is a material witness in this litigation and reports directly to Michael Ring. Ms. Wilson has never been involved with any electronic discovery and only knows of Federal Rule of Civil Procedure 26 from what she read on the Internet in the fall of 2013. *Tr.* at 7. Ms. Wilson does not know how the backup system works and whether the school district has a policy on the use of personal devices in the workplace, even though she is the head of technology for the school district. *Tr.* at 13-14, 40. Furthermore, Ms. Wilson admitted she did now know she needed to inform any of the identified key custodians in the case to preserve electronic data. *Tr.* at 61-62.

Defendants' counsel's failure to oversee the ESI search and decision to leave in charge a person

who has no prior knowledge of conducting electronic discovery according to FRCP Rule 26, no knowledge regarding the school district's backup system, and no knowledge of key custodians, is at best in bad-faith and simply inexcusable.

### B. Spoliation Prong Two: State of Mind

The second prong of the spoliation analysis requires that plaintiffs show "that the records were destroyed 'with a culpable state of mind.' " *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d at 107. "[A]s the Second Circuit recently observed, '[t]he law in this circuit is not clear on what state of mind a spoliator must have when destroying [evidence].' " *Sterbenz v. Attina,* 205 F.Supp.2d at 74 n. 13 (citing *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d at 107–08). Some courts in this circuit have required a showing of bad faith, some have required proof of intentional destruction, and others have drawn an inference based on gross negligence. *See Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d at 107–08 (citing *Reilly v. NatWest Mkts. Group Inc.,* 181 F.3d 253, 267 (2d Cir.1999), *cert. denied,* 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000)).

In *Zubulake V,* the court noted that the requirement that counsel "take affirmative steps to monitor compliance" with a litigation hold is not a particularly burdensome one. 229 F.R.D. at 434 (emphasis added). In fact, "[c]ounsel does not have to review these documents, only see that they are retained." *Id.* Therefore, "the central question ... is whether [defendant] and its counsel *took all necessary steps to guarantee that relevant data was both preserved and produced.* If the answer is 'no,' then the next question is whether [defendant] acted willfully ... negligently or even recklessly." *Id.* at 431.

Neither negligence or gross negligence has been clearly defined in the context of discovery misconduct, such as spoliation. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. L.L.C.,* 685 F.Supp.2d at 463. "[T]hese terms simply describe a continuum. Conduct is either acceptable or unacceptable. Once it is unacceptable the only question is how bad is the conduct.... That

said, it is well established that *negligence* involves unreasonable conduct in that it creates a risk of harm to others." *Id.* at 463–64. " 'Gross negligence has been described as a failure to exercise even that care which a careless person would use.' " *Id.* (citation omitted). Courts in this circuit have found that the "failure to preserve evidence resulting in the loss or destruction of relevant information is surely negligent, and, depending on the circumstances, may be grossly negligent." *Id.* at 464–65. However, "the failure to issue a *written* litigation hold constitutes gross negligence because that failure is likely to result in the destruction of relevant information." *Id.* (emphasis in original); *see also Chan v. Triple 8 Palace, Inc.,* 2005 WL 1925579, at *7 (finding that "the utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent"); *Zubulake IV,* 220 F.R.D. at 217. Here, it appears that a written litigation hold may not have been issued to the key players. Further the fact that a litigation hold has still not been implement and the fact that Michael Ring a named party in this lawsuit is still able to delete documents from his computer constitute "bad conduct."

In *Pension Committee,* the court held that a party's "fail[ure] to execute a comprehensive search for documents and/or fail[ure] to sufficiently supervise or monitor [ ] document collection," was "best characterized as either grossly negligent or negligent." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.,* 685 F.Supp.2d at 477. While the failure to collect records from those who are not key players may constitute negligence, the failure to collect and preserve records from key players "constitutes gross negligence." *Id.* at 465, 477. Even in less extreme cases, where the defendant "failed to institute a full preservation program" and failed to ensure that all necessary employees, including support staff, knew about the preservation program, sanctions have been awarded. *Treppel v. Biovail Corp.,* 249 F.R.D. at 118–19.

It is abundantly clear that the Defendants in this action did not take *any,* let alone "all necessary steps to guarantee" that ESI is preserved. Ms. Wilson admitted she was never told to stop overwriting backup data, and that since Plaintiff left her position in September of 2010, there would be nothing left

to preserve. *Tr. at 13.* Further, Defendants did not take steps to ensure that custodians of ESI would preserve relevant data. *Tr.* at 68. It appears that Defendants were not placed on notice, based on the Affidavit and Deposition of Ms. Wilson, and it is equally clear that the initial ESI search, which turned up no relevant ESI, was not adequately supervised or directed by Defendants' counsel, since Ms. Wilson admits it occurred in October of 2013 almost three months after the initial discovery documents were due. *Tr. at 47.* The "utter failure to establish any form of litigation hold at the outset of litigation [or any time since then] is grossly negligent." *Chan v. Triple 8 Palace, Inc.,* 2005 WL 1925579, at *7. Therefore, there has been likely destruction of relevant evidence.

Based on these facts, the Court should find that Defendants have acted with the requisite degree of culpability to satisfy the second prong of the spoliation test. *See Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d at 107.

### C. *Spoliation Prong Three: Relevance and Prejudice*

Once evidence is alleged to have been destroyed due to a party's negligence or gross negligence, the Court considers whether "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* at 107–09; *Zubulake V,* 229 F.R.D. at 431. The party seeking sanctions must make a showing that the destroyed evidence would have been favorable to its case. *See De Espana v. Am. Bureau of Shipping,* No. 03 CV 3573, 2007 WL 1686327, at *6 (S.D.N.Y. June 6, 2007) (noting that "where the culpable party was negligent, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party"); *see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.,* 685 F.Supp.2d at 467–68; *Zubulake IV,* 220 F.R.D. at 221. However, courts have held that "[t]he burden placed on the moving party to show that the lost evidence would have been favorable to it ought not to be too onerous, lest the spoliator be permitted to profit from its destruction." *Treppel v. Biovail Corp.,* 249 F.R.D. at 123 (quoting *Chan v. Triple 8*

*Palace, Inc.,* 2005 WL 1925579, at *7).

In considering the burden of establishing relevance and prejudice when documents have been destroyed, at least one court has found that "[t]he burden of proof question differs depending on the severity of the sanction. For less severe sanctions—such as fines and cost-shifting—the inquiry focuses more on the conduct of the spoliating party than on whether documents were lost, and if so, whether those documents were relevant and resulted in prejudice to the innocent party." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.,* 685 F.Supp.2d at 467. However, "for more severe sanctions—such as dismissal, preclusion, or the imposition of an adverse inference—the court must consider, in addition to the conduct of the spoliating party, whether any missing evidence was relevant and whether the innocent party has suffered prejudice as a result of the loss of evidence." *Id.*

"[T]he burden of proving that evidence would have been relevant to a party's claims or defense is proportional to the *mens rea* of the party who destroyed the evidence," and "where the party destroyed the evidence due to ordinary negligence [as opposed to bad faith], 'the burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.' " *Gutman v. Klein,* 2008 WL 4682208, at *7. To satisfy this burden, the innocent party may provide sufficient evidence that would tend to show that the lost documents " 'would have been favorable to [its] case.' " *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.,* 685 F.Supp.2d at 468 (quoting *Toussie v. County of Suffolk,* 2007 WL 4565160, at *8).

Where, as in this case, a spoliating party has been grossly negligent, resulting in the loss of evidence, many courts have presumed relevance, *Id.; see also Treppel v. Biovail Corp.,* 249 F.R.D. at 121–22 (holding that "under certain circumstances 'a showing of gross negligence in the destruction ... of evidence' will support [a relevance] inference") (internal citations omitted).

In the instant case, Plaintiff sought production of the original metadata to determine whether

emails, notes, correspondence, and memoranda about Lisa Alter and her potential claims were in their original format. Without obtaining ESI in their native format, it would difficult to prove motive, knowledge, and potential cover-up of the events and the roles of key players. Certainly, ESI would help establish the merits of Ms. Alter's claim, when the Defendants became aware of her claims, who became aware, the Defendants' response to her complaint and the adequacy and objectiveness of the investigation, actions and opinions of key players, are all material and relevant. The failure to preserve ESI, knowingly and willfully, has irreparably prejudiced the Plaintiff. Specifically, Defendants' counsel failed to implement a litigation hold on employees and Board of Education members of the Rocky Point School District, failed to oversee the electronic discovery process, even after having been court ordered to do so, and thereafter left in charge, of the electronic discovery process, without supervision, a school district employee that is a material witness in this litigation and who has no experience conducting electronic discovery in a federal litigation. (*See* Exhibit D, Affidavit of Susan Wilson).

Accordingly, given that Plaintiff has established the three elements necessary to warrant the imposition of sanctions for spoliation of evidence, the Court must grant plaintiffs' motion for sanctions for failure to produce evidence and for spoliation.

## III. PLAINTIFF HAS DEMONSTRATED SUFFICIENT PREJUDICE BY DEFENDANTS' ACTION FOR AN ADVERSE INFERENCE CHARGE.

"That an adverse presumption may arise from the fact of missing evidence is a generally accepted principle of law that finds its roots in the 18th century case of the chimney sweeper's boy who found a jewel ring, took it to a jeweler for appraisal, got back the ring minus the jewel, and brought an action in trover." *Welsh v. United States,* 844 F.2d 1239, 1246 (6th Cir. 1988). Generally, "[w]hen the contents of a document are relevant to an issue in a case, the trier of fact . . . may receive the fact of the document's . . . destruction as evidence that the party which has prevented production did so out of the

well-founded fear that the contents would harm him." *Nation–Wide Check Corp., Inc. v. Forest Hills Distribs., Inc.,* 692 F.2d 214, 217 (1st Cir. 1982).

An adverse inference charge serves the dual purposes of remediation and punishment.  First, it seeks to put the non-spoliator in a position similar to where it would have been but for the destruction of evidence. *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 74 (S.D.N.Y. 1991).  Second, it carries a punitive effect; "'the law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrongdoer by the very means he had so confidentially employed to perpetrate the wrong.'"  *Id.* (quoting *Pomeroy v. Benton,* 77 Mo. 64, 86 (1882)); *see Nation–Wide,* 692 F.2d at 218 ("Allowing the trier of fact to draw the [adverse] inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.").  The two most important factors in determining whether an adverse inference charge is justified are the culpability of the spoliator and the prejudice accruing to the non-spoliator.  *See Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79, 81 (3d Cir.1994); *Byrnie v. Town of Cromwell,* 243 F.3d 93, 107–12 (2d Cir. 2001).

## A. *Prong One: Culpable State of Mind*

The "culpable state of mind" factor is satisfied by a showing that the evidence was destroyed "knowingly, even if without intent to [breach a duty to preserve it], or negligently." *Byrnie*, 243 F.3d at 109.  The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence.  "[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently.  The adverse inference provides the necessary mechanism for restoring the evidentiary balance.  The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk

that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 75 (S.D.N.Y. 1991); see *Richard Green (Fine Paintings) v. McClendon* (art collector and her attorney had "culpable state of mind," as required to support adverse inference instruction based on spoliation of evidence, when they negligently failed to implement a litigation hold, failed to properly search for responsive documents, and failed to supplement discovery responses in a timely and thorough manner in response to art dealer's suit for breach of contract and promissory estoppel); *see generally Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998) (stating that an adverse inference instruction serves the remedial purpose, "insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party").

### B. *Prong Two: Prejudice to the Non-Spoliator*

Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party. S*ee, e.g., Kronisch,* 150 F.3d at 126 ("It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."). Similarly, a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party. *See Reilly v. Natwest Markets Group Inc.,* 181 F.3d 253, 267–68 (2d Cir. 1999). Accordingly, where a party seeking an adverse inference adduces evidence that its opponent destroyed potential evidence (or otherwise rendered it unavailable) in bad faith or through gross negligence (satisfying the "culpable state of mind" factor), that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party.

Defendants have, in bad faith, destroyed responsive documents in the instant case. To date, a litigation hold notice has not been distributed to Rocky Point School District nor to the "key players" in the case (*See* Exhibit J at 13, Deposition of Susan Wilson). Ms. Wilson admitted she was never told to stop overwriting backup data. *Tr.* at 13. She further admitted that key custodians were not advised to not delete anything from the district's H drive. *Tr.* at 68. Furthermore, emails, computers, and devices of "key players" were not searched. *Tr.* at 26, 53-56. By way of example, according to Ms. Wilson's affidavit, many "key players" identified in the Rule 26(a) disclosure and deposition notices had computers, devices, or emails that were not searched (*See* Exhibit J). The computers of the following "key players" were not searched: Carla D'Ambrosio, Michael Ring, Lisa Alter, David Pearl, Michael Nofi, Susan Wilson, and Greg Hilton. *Tr.* at 38-41. The emails and exchanges of emails between the following individuals were not searched: Michael Ring, Susan Wilson, David Pearl, Michael Nofi and other Board Members, Susan Blake, Carla D'Ambrosio's June 2010 Administrative Assistant, Loretta Sanchez, Patricia Jones, and Greg Hilton. *Tr.* at 53-56.

At this juncture, Carla D'Ambroio's individual laptop has been "reimaged", Michael Ring has had unfettered access to his personal work computer and has been free to delete or destroy any relevant data. Because Defendants did not identify all relevant systems, computers, emails and devices and did not produce responsive documents that they have in their possession, it is clear that relevant documents were destroyed because of Defendants' counsel's reckless failure to adequately supervise the discovery process.

The destroyed documents are relevant and would have been offered into evidence. Accordingly, an adverse inference is appropriate.

**IV. THERE IS SUFFICIENT EVIDENCE ON THE RECORD FOR THE COURT TO MANDATE THAT AN INDEPENDENT FORENSIC COMPUTER EXPERT CONDUCT ELECTRONIC DISCOVERY OF DEFENDANTS' SYSTEMS, COMPUTERS, EMAILS AND DEVICES.**

Where there are outstanding issues as to whether a party to a lawsuit is hiding or has deleted responsive electronic documents, a court may permit a neutral forensic computer expert to inspect that party's computers and servers. *See Sterle v. Elizabeth Arden, Inc*., No. 3:06 CV 01584, 2008 WL 961216, *1 (D. Ct. Apr. 9, 2008); *Tillberg v. Next Management Co*., No. 04-CIV-7373, 2005 WL 2759860, *1 (S.D.N.Y. 2005). The costs associated with a neutral forensic computer expert can be imposed on the party who is hiding or has deleted responsive documents. *See Treppel v. Biovail Corp*., 249 F.R.D. 111, 124 (S.D.N.Y. 2008).

In the instant case, Defendants have not produced known responsive documents to Plaintiff's document requests. As such, Defendants are either hiding or have destroyed responsive documents. The court should therefore, in the interest of justice, permit Plaintiff to undertake, at Defendants' expense, a thorough examination of Defendants' servers and the computers and other electronic devices of "key players" in this action. (*See* Exhibit K, Proposed Discovery Order).

**V. ATTORNEY'S FEES**

Plaintiff's counsel is prepared to provide the Court with contemporaneous billing records to support Plaintiff's request for attorney's fees as mandated by the Second Circuit in *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983). Plaintiff's counsel's hourly rate is $300 per hour, which is consistent with the hourly rate in this district for similar services by lawyers of reasonably comparable skill.

THEREFORE, plaintiffs respectfully request that this court enter an order:

(1) compelling defendants to produce ESI as outlined in Judge Tomlinson's November 4, 2013 Order and the letter dated November 5, 2013 by Sima Ali, Esq. to Maureen Casey;

(2) awarding plaintiff the costs associated with the bringing this motion, including reasonable attorney's fees;

(3) awarding plaintiffs sanctions against Defendants' counsel for failing to personally oversee searches for relevant discovery and for inadequately supervising such discovery;

(4) awarding plaintiffs sanctions for the spoliation of evidence;

(5) awarding plaintiffs an adverse inference charge in the event Defendants fail to comply with the Pretrial Order;

(6) compelling defendants to produce electronic discovery by an outside expert whereby all costs will be borne by defendants;

(7) scheduling a compliance conference on or around Friday, January 31, 2014 to allow for resolution of these and all other discovery issues within the current discovery deadline of February 28, 2014.  .

Dated:          Huntington, New York
                January 23, 2014


                              By: _____/s/_____
                                  Sima Ali, Esq. (SA- 4423)
                                  *Attorneys for the Plaintiff*
                                  Ali Law Group, P.C.
                                  775 Park Ave., Suite 255
                                  Huntington, NY 11743
                                  (tel) (631) 423-3440
                                  sima.ali@alilawgroup.com